**Opinion issued July 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00179-CR

———————————

**MIGUEL GOMEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1358720**

---

# O P I N I O N

A jury convicted Miguel Gomez of aggravated sexual assault of a child under 14 years of age. *See* TEX. PENAL CODE § 22.021. The court assessed punishment at 25 years in prison. Among other issues on appeal, Gomez asserts

constitutional error in the trial court's failure to instruct the jury that it must unanimously agree on the occurrence of a single incident of conduct.

We conclude that the State's argument misinformed the jury about the requirement that it unanimously agree on a single incident of criminal conduct, and the trial court's erroneous failure to instruct the jury on this issue caused egregious harm. Accordingly, we reverse and remand for a new trial.

## Background

When the complainant was 7 years old, her parents were divorced, and appellant Miguel Gomez was dating her mother. The complainant lived with her father, but she and her brother would visit her mother every other weekend, and at times Gomez would be the only adult watching her.

One day, the complainant called her mother at work and accused Gomez of touching her inappropriately. The mother responded by talking with both the complainant and Gomez on their front patio. Gomez responded to the allegations by saying that he did not know what the complainant was talking about.

The mother spoke to a friend, Crystal Rocha German, and she eventually decided to take the complainant to a hospital for a rape exam. A nurse performed a nonacute sexual assault exam and did not find any trauma. In response to the complainant's statement that Gomez had touched her vagina, the nurse referred her to the Children's Assessment Center.

The assessment center conducted forensic interviews with the complainant, her mother, and Gomez. The complainant told an interviewer that Gomez had touched her several times, but she discussed three separate incidents specifically. The first incident occurred after Gomez and the children returned home from a pool. Gomez washed the complainant with his hands, then laid a towel on the bed and put baby oil on her body. Gomez then put his finger inside "her middle."

The second incident occurred while the complainant was asleep on her mother's bed. Gomez picked her up to move her away from the bed, and the complainant said "she felt a hand go up her pants and a fingernail went into her middle." The complainant's mother later testified that she remembered this specific incident. She was present at the time, did not see Gomez touch the complainant inappropriately, and believed that this accusation was false.

The third incident that the complainant described to the interviewer occurred during a game. The complainant said that while both of them were clothed, she and Gomez wrestled, and he spread her legs and their pelvises touched repeatedly. The interviewer admitted on cross-examination that this may not have been a sexual act. The interviewer noted that when discussing all three incidents, the complainant was "kind of mashing them together" and talking about them as if they were happening concurrently, rather than discussing each in isolation.

The complainant later described a fourth incident that occurred when taking a shower with her sister, who was two years old at the time. The complainant again described Gomez washing her "middle part" with his hand and touching the inside of her vagina. The complainant did not describe this incident to the forensic interviewer, but she did recount it at trial.

Gomez was indicted on one count of aggravated sexual assault of a child. At trial, the State elicited testimony from the complainant's mother, the nurse who performed the initial nonacute exam, the assessment center interviewer, the complainant's therapist, the complainant's father, the complainant herself (who was then 12 years old), and an assessment center psychologist who served as an expert. The expert specifically testified about the effect of trauma on a child victim's memories, and the potential resulting partial disclosure and issues with retelling incidents. The therapist testified that the complainant was consistent in accusing Gomez of assaulting her.

Gomez rested without presenting evidence in his case-in-chief, and he did not testify during the guilt–innocence phase of trial. He did not ask the State to make an election as to which incident it wished to prosecute.

During closing argument, Gomez's counsel argued that the complainant's accusations were a "fantasy" that was brought about because of instability in her home and as a result of her dysfunctional family. Defense counsel focused on each

4

particular incident in turn, specifically mentioning the mother's testimony that the incident on the bed did not occur, and that complainant had answered on cross-examination that she did not remember several details about the other incidents. He made no argument relating to jury unanimity.

The State's closing argument focused on retelling the several incidents that the complainant described and emphasizing that she had no motive for falsity. The prosecutor also made this statement:

> When you go back and you read through the jury charge, one of the things that the defense wants you to get confused on is they want you to think that we're limited to one of these instances, and to try to hang you up there. If four of you think that oil incident is beyond a reasonable doubt and four of you think that bed incident is beyond a reasonable doubt and the other four think that some other incident was beyond a reasonable doubt, then we have proved our case.

> Because what is important is that all 12 of you believe that Miguel Gomez penetrated that seven-year-old girl's vagina, and he did so with his finger. And if all 12 of you believe that, then we have proved our case beyond a reasonable doubt.

Gomez's counsel did not object to this statement. The prosecutor additionally referred to the expert's testimony regarding a young child victim's tendency to "mix dates . . . and mix instances."

The court's instruction to the jury included the following paragraph on jury procedure:

> As you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside

at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as "Foreman."

There were no other instructions relating to jury unanimity in the charge. The court also instructed the jury that it could not consider evidence of "other crimes, wrongs, or acts against the child who is the victim of the alleged offense" unless they bore "on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and child, and for no other purpose." The instructions stated that the State was not bound by the specific date alleged in the indictment, so long as "the offense, if any, was committed at any time within the period of limitations." Neither the defense nor the State objected to the jury instructions.

During deliberation, the jury sent this request for clarification: "Is it our charge to determine that one or more of the specific instances related by [the complainant] did occur on or about the date mentioned in the indictment, or just that one or more of these instances did occur as testified to?" The court responded that the jury should refer to the court's charge.

The jury convicted Gomez of aggravated assault of a child under the age of 14. Gomez elected to have punishment assessed by the court, which assessed punishment at 25 years in prison. Gomez appealed.

**Analysis**

In his first three issues, Gomez asserts that the trial court erred by failing to instruct the jury that it must unanimously find that a single incident of the charged offense was proven beyond a reasonable doubt. Gomez argues that because of this, he was denied his constitutional and statutory rights to a unanimous verdict. The State responds that the lack of instruction did not cause Gomez egregious harm and that any other argument was not preserved due to the lack of objection at trial.

A jury must reach a unanimous verdict about a specific felony that the defendant committed. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). This requires the jury to "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).

A non-unanimous verdict can occur when the State presents evidence that the same criminal conduct was repeated on several occasions but the results of the conduct differed, when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate occasions, or when the State charges one offense and presents evidence of an offense that was committed at a different time but violated another provision of the same statute. *Id.* at 771–72. If the State presents evidence that the defendant committed the charged offense on multiple occasions, the judge's charge can ensure unanimity by instructing the jury

that its verdict must be unanimous as to a single offense among those presented. *Id.* at 772. The instruction should not refer to any specific evidence in the case and should permit the jury to return a general verdict. *Id.* at 776.

A defendant may choose to require the State to elect a specific criminal act that it relies upon for conviction. *See id.* at 775; *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). This choice is strategic and may be waived or forfeited. *Cosio*, 353 S.W.3d at 775. One reason that a defendant may refuse to elect is that the State will be jeopardy-barred from prosecuting the other offenses that were in evidence. *See id.*; *Ex parte Pruitt*, 233 S.W.3d 338, 346 (Tex. Crim. App. 2007). Even if the defendant does not require an election, the trial judge bears the ultimate responsibility to ensure unanimity through the instructions in the jury charge. *See Cosio*, 353 S.W.3d at 776.

A constitutional unanimity violation is subject to the constitutional harm standard when properly preserved by a timely and specific objection at trial. *Id.* at 776; *see* TEX. R. APP. P. 44.2(a). Gomez did not preserve the constitutional or statutory issues through such a timely objection. *See* TEX. R. APP. P. 33.1(a). However, under the standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), charge error may never be waived by a defendant's failure to object at trial. *See id.* at 171. When, as in this case, the constitutional and statutory

8

issues have not been properly preserved, we analyze whether there is charge error and whether that caused egregious harm. *See Cosio*, 353 S.W.3d at 776.

When analyzing potential jury-charge error, our first duty is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we determine that error exists, we analyze that error for harm. *Id.* When a defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743–44; *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). For egregious harm to be established, the charge error must have affected "the very basis of the case," "deprive[d] the accused of a valuable right," or "vitally affect[ed] his defensive theory." *Almanza*, 686 S.W.2d at 172. To assess whether egregious harm occurred we look to the particular facts of the case, and consider: (1) the charge; (2) the state of the evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Cosio*, 353 S.W.3d at 777; *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). The *Almanza* analysis is fact-specific and done on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

In *Cosio v. State*, 353 S.W.3d 766 (Tex. Crim. App. 2011), the defendant was charged with four felony counts of aggravated sexual assault of a child. *See id.* at 769. The charge in the case generally instructed the jury that the verdict needed to be unanimous, and the defendant did not object to the charge. *See id.* at 770. The

9

Court of Criminal Appeals stated that the charge impermissibly allowed the jury to rely on separate instances and render non-unanimous verdicts, and the standard unanimity instruction did not rectify the charge error. *See id.* at 774.

After concluding that the defendant's failure to object had waived error on all issues but harm in the jury charge, the Court analyzed the facts of the case for egregious harm. *See id.* at 777–78. The Court concluded that although the charge permitted non-unanimous verdicts, neither party nor the judge had added to the charge errors by telling the jury it did not have to be unanimous about the specific instance of criminal conduct. *See id.* at 777; *compare Ngo*, 175 S.W.3d at 750–51 (prosecution and trial judge both misstated law regarding unanimous verdicts). Additionally, the Court determined that based on the state of the evidence, the defendant's case "was essentially of the same character and strength across the board" and that had "the jury believed otherwise, they would have acquitted Cosio on all counts." *Cosio*, 353 S.W.3d at 777–78. The Court held that because neither the arguments of the parties nor the state of the evidence showed actual harm, the defendant had not been egregiously harmed, and reversed the court of appeals. *See id.* at 778.

The Court of Criminal Appeals similarly reversed for lack of egregious harm in *Arrington v. State*, 451 S.W.3d 834 (Tex. Crim. App. 2015). As in *Cosio*, the defendant in *Arrington* was charged with several different sexual offenses. *See id.*

10

at 837–38. The charge did not require the jurors to be unanimous as to which separate criminal act constituted each count, but instead included only a generic unanimity instruction. *Id.* at 838. The Court noted that the court of appeals had failed to "consider the entire record" when looking to the state of the evidence in the case and had erred by disregarding evidence that had been admitted for all purposes at trial. *Id.* at 842–43. Concluding that the only factor that weighed in favor of finding egregious harm was the jury instructions themselves, the Court reversed. *See id.* at 845.

In this case, as in *Cosio* and *Arrington*, the trial court failed to instruct the jury in the jury charge that it needed to unanimously base its verdict on a single offense among those presented. *See Arrington*, 451 S.W.3d at 841–42; *Cosio*, 353 S.W.3d at 772, 774. Therefore, we must analyze whether the charge error caused Gomez egregious harm.

## I.  Jury charge

The charge in this case permitted non-unanimous verdicts based on the evidence presented in the case. The State asserts that the remainder of the charge was correct, and it included language regarding unanimity. The State also argues that because it only brought one charge of aggravated sexual assault and the jury instructions specifically excluded extraneous offenses, this factor should weigh against egregious harm. We disagree.

As the Court of Criminal Appeals has repeatedly held, generic language regarding unanimity in the overall verdict is insufficient to ensure a unanimous verdict on a single incident. *See Arrington*, 451 S.W.3d at 841 (noting that even several generic requirements of unanimity cannot ensure a unanimous verdict when there is evidence of multiple incidents). A limiting instruction regarding extraneous acts is similarly inadequate to instruct the jury that it must unanimously agree on a single incident of criminal conduct that supports the charge. *See Cosio*, 353 S.W.3d at 773–74. The extraneous act instruction given in this case would prevent the jury from considering crimes not charged in the indictment for irrelevant purposes, but it would not require the jury to find unanimously in favor of a single transaction that supports the indictment.

Despite bringing only one count of sexual assault against Gomez, the State presented evidence of at least three distinct criminal offenses. Nothing in the jury charge required the jury to agree unanimously that the State had proven a particular offense beyond a reasonable doubt. *See id.* at 772. Therefore, we find that this factor weighs in favor of egregious harm. *See Arrington*, 451 S.W.3d at 841.

## II. State of the evidence

The evidence of the offense in this case came nearly exclusively from oral testimony from those involved. In addition to the complainant's own testimony, several family members testified about events surrounding her outcry, and both the

interviewer who initially spoke to the complainant and an expert from the Children's Assessment Center discussed what the complainant said in her statement and the psychological implications of her testimony. The therapist also testified about her consistency in naming Gomez and describing the alleged assaults.

As in *Arrington*, there was no medical or DNA evidence in this case that could corroborate the complainant's claims. *See id.* The result in this case was that the sole evidence of the assault came from the complainant and those who had heard her talk about the incidents. However, unlike in *Arrington*, the defendant did not testify or put on any witnesses in this case, but instead he required the State to prove its burden. *Cf. id.* at 842. While in *Arrington* the jury faced a decision between two opposing narratives, and the defendant's version was a full denial of the complainant's story, in this case the jury could believe the complainant's story entirely, in part, or not at all. *Cf. id.*

The complainant testified to four separate instances of possible sexual assault: once when Gomez took her away from bed, once in the shower, once when he applied baby oil to her, and once when they wrestled. The defense effectively controverted the bed incident through the testimony of the complainant's mother, who stated that she had witnessed the event and did not believe the complainant was telling the truth. Gomez also cast doubt on the nature of the wrestling incident,

as the forensic interviewer admitted on cross-examination that this may not have been sexual conduct. For the remaining incidents, trial counsel largely cross-examined the complainant and focused on the incomplete nature of her recollections. Therefore, unlike in *Cosio*, the defense was not "essentially of the same character and strength across the board." 353 S.W.3d at 777.

However, the evidence ultimately persuaded the members of the jury to find that Gomez did commit the offense beyond a reasonable doubt on at least one occasion, or they would have acquitted him. *See id.* While the issues at trial were contested, we nonetheless conclude that the state of the evidence weighs slightly against a finding of egregious harm. *See Cosio*, 353 S.W.3d at 778; *Arrington*, 451 S.W.3d at 844.

## III. The parties' arguments

The defense's overall theory was espoused during closing arguments, when trial counsel argued that the complainant's version of events was a "fantasy" caused by stress associated with her dysfunctional family. Given the verdict in the case, the jury apparently rejected this theory and believed the complainant at least in part, or it would not have convicted Gomez. *See Cosio*, 353 S.W.3d at 777–78. However, defense counsel did not make any argument regarding unanimity.

The only direct reference to unanimity during Gomez's trial came from the prosecutor in his closing argument:

14

When you go back and you read through the jury charge, one of the things that the defense wants you to get confused on is *they want you to think that we're limited to one of these instances*, and to try to hang you up there. *If four of you think that oil incident is beyond a reasonable doubt and four of you think that bed incident is beyond a reasonable doubt and the other four think that some other incident was beyond a reasonable doubt, then we have proved our case.*

Because what is important is that all 12 of you believe that Miguel Gomez penetrated that seven-year-old girl's vagina, and he did so with his finger. And if all 12 of you believe that, then we have proved our case beyond a reasonable doubt.

(Emphasis supplied.) The prosecutor's argument was a clear misstatement of the law, one that capitalized on the jury charge's failure to instruct the jury regarding unanimity, and instructing them the opposite of what the law required. *See Ngo*, 175 S.W.3d at 750 (prosecutor's statement that the jury could "mix and match" offenses was misstatement of the law and major factor in finding egregious harm). This argument occurred shortly before the jury deliberated, and it was not corrected or ameliorated in any way—to a reasonable jury member, it could have appeared to be the law.

The only time the jury received any instruction regarding the necessity of unanimously finding a single incident of conduct, it was affirmatively told it did not need to do so. *See id.* at 751. We therefore conclude that this factor weighs strongly in favor of a finding of egregious harm. *See id.* at 750–52; *cf. Cosio*, 353 S.W.3d at 777 (when neither of the parties nor the trial judge added to the charge

error by telling the jury it did not have to be unanimous, factor was not in favor of egregious harm).

## IV.  Other relevant information in the record

Gomez argues that the jury's request for clarification is additional information that weighs in favor of egregious harm. The jury sent a request for clarification during deliberation asking: "Is it our charge to determine that one or more of the specific instances related by [the complainant] did occur on or about the date mentioned in the indictment, or just that one or more of these instances did occur as testified to?" The court responded that the jury should refer to the court's charge. Gomez claims that the "one or more" language was a reference to whether the jury had to agree on a single incident because it had heard evidence of multiple acts. The State contends that this was only a question about whether the date in the indictment was a necessary element of the charge.

We agree with the State's evaluation of the jury's question. The jury did not appear to be asking for clarification as to which instance it was intended to find. Instead, it was asking for clarification as to whether it had to find that the incident used for conviction occurred on the date mentioned in the indictment. We conclude that this factor does not weigh either for or against egregious harm. *See Cosio*, 353 S.W.3d at 777.

\*    \*    \*

16

When examining all four factors to determine egregious harm, two of them weigh heavily in favor of finding reversible error in this case. While the state of the evidence is slightly against reversal, the charge error combined with the State's misstatement of the law enabled the jury to find Gomez guilty of some combination of the various incidents presented at trial, rather than a single incident of conduct. *See Ngo*, 175 S.W.3d at 752.

Accordingly, we conclude that the charge error caused Gomez egregious harm by depriving him of his valuable right to a unanimous jury verdict. *See id.* Because egregious harm demands reversal, we need not reach Gomez's remaining issues.

## Conclusion

We reverse and remand for a new trial.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).

17