**Opinion issued December 20, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00780-CR

————————————

**LONNIE JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1427560**

## MEMORANDUM OPINION

A jury found appellant, Lonnie Jackson, guilty of the offense of aggravated

sexual assault of a child[1] and the trial court assessed his punishment at ten years'

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (2)(B) (West 2016).

confinement.  In two points of error, appellant contends that (1) there was error in the jury charge because the jury was allowed to arrive at a non-unanimous verdict and (2) the trial court erred in admitting hearsay statements from medical records. We affirm.

## Background

The indictment in this case alleged that appellant

[O]n or about May 6, 2014, did then and there unlawfully, intentionally and knowingly cause the anus of [C.L.], a person younger than fourteen years of age and not the spouse of the Defendant, to contact the SEXUAL ORGAN of THE DEFENDANT.

[O]n or about May 6, 2014, did then and there unlawfully[] intentionally and knowingly cause the mouth of [C.L.], a person younger than fourteen years of age and not the spouse of the Defendant, to contact the SEXUAL ORGAN of THE DEFENDANT.

At trial, appellant was arraigned only on the second paragraph alleging oral contact.

On May 6, 2014, C.L., the six-year old complainant,[2] was at home with her eight-year old brother, J.L, her older sister, and appellant, their cousin.  C.L. testified that while she was doing her homework, appellant pulled her to the couch, grabbed her head and made her "suck his middle part," and "placed his middle part in my butt."  C.L. testified that appellant had done those things more than once.  C.L. also stated that appellant told her that he would punch her if she did not do it and not to

---

[2]     To protect the privacy of the children in this case, we identify them by their initials.

2

tell anyone about it. She also testified that J.L. walked into the room while she was sucking appellant's "middle part."

When her mother returned home, C.L. told her what had happened and spoke to a police officer later that night at the hospital. When asked on cross-examination if appellant had done these bad things to her when she and appellant were in the living room, C.L. testified that "[appellant] always did after my mom leaves."

J.L. testified that, in May 2014, his mother put appellant in charge of watching him and his sisters while she was out. He testified that when he went to check on C.L. to see if she was doing her homework, he saw her sucking appellant's penis. When his mom got home, J.L. and his older sister told her what had happened. J.L. testified that he later went to the hospital with C.L. and his mom where he spoke with a police officer.

On May 7, 2014, at approximately 2 a.m., Officer L. Donovan of the Houston Police Department Child Sex Abuse Unit met C.L., her brother, and their mother at the hospital. Officer Donovan testified that C.L. told him that she and appellant were in the living room when appellant put his "private part" in her bottom. Officer Donovan later learned from another officer that appellant had put his "private part" in her bottom and in her mouth multiple times, and that appellant told her "suck my penis or I will punch you." Officer Donovan, who also interviewed J.L., stated that the details of J.L.'s statement were consistent with what the officer knew about the

3

case. When asked on cross-examination whether C.L. told him that appellant had done this to her a hundred or a thousand times, Officer Donovan testified that C.L. had said something "to that effect."

On May 7, 2014, Tammy Herrera-Aguilera, a sexual assault nurse examiner (SANE) at Texas Children's Hospital, met with C.L. and her mother to obtain patient history and perform a sexual assault exam on C.L. Herrera-Aguilera testified that C.L. told her that her "big cousin put his thing inside my butt," and that C.L.'s mother also reported penile-oral contact.

After the jury found appellant guilty of the charged offense, the trial court assessed his punishment at ten years' confinement. This appeal followed.

## Jury Charge Error

In his first point of error, appellant contends that the trial court erred in submitting a jury charge that allowed the jury to arrive at a non-unanimous verdict. He argues that the trial court should have required the jury to reach a unanimous verdict regarding which instance of aggravated sexual assault it believed appellant committed.

### A. Applicable Law

Texas law requires that a jury reach a unanimous verdict about the specific crime the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim.

App. 2011). This means that the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged. *Id.* Non-unanimity may result "when the jury charge fails to properly instruct the jury, based on the indicted offense(s) and specific evidence in the case, that its verdict must be unanimous." *Id.*

A non-unanimous verdict can occur (1) when the State presents evidence that the same criminal conduct was repeated on several occasions but the results of the conduct differed; (2) when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate occasions; or (3) when the State charges one offense and presents evidence of an offense that was committed at a different time but violated another provision of the same statute. *Id.* at 771–72; *Gomez v. State*, 498 S.W.3d 691, 695 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

We review potential jury charge error by considering whether (1) error exists in the charge and, if so, (2) whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.*; *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). When, as here, a defendant fails to object, we will not reverse for jury charge error

unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743–44.

## B. Charge Error

Appellant argues that the verdict was not unanimous. He asserts that he was indicted for two instances of aggravated sexual assault (i.e., causing C.L.'s anus and mouth to contact his sexual organ), and while the State arraigned appellant on and proceeded to try him for one instance of aggravated sexual assault (i.e., causing C.L.'s mouth to contact his sexual organ), it presented evidence which made reference to a number of instances of both offenses.

It is undisputed that the State presented evidence of both anal and oral contact. However, evidence that appellant caused C.L.'s anus to contact his sexual organ does not impact jury unanimity because oral contact was the only offense presented to the jury in the charge.

With regard to appellant's assertion that the State presented evidence of several instances of oral contact, the record reflects that C.L. testified that appellant had put his sexual organ in her mouth and her anus more than once and that "[appellant] always did it after my mom leaves." Officer Donovan also testified that C.L. told him that appellant had put his "private part" in her bottom and in her mouth multiple times. However, the charge instructed the jury that to find appellant guilty of aggravated sexual assault of a child, it had to unanimously find that he caused

6

C.L.'s mouth to contact appellant's sexual organ on or about May 6, 2014.[3] Further, the charge limited the jury's consideration of other criminal acts by requiring that it "only consider the same" as they related to relevant matters such as state of mind and to the previous and subsequent relationship of the defendant and the child "and for no other purpose."

Because the jury charge required the jury to agree unanimously that the State had proven a single incident of the charged offense, we find no error in the charge. We overrule appellant's first point of error.

## Admissibility of Evidence

In his second point of error, appellant contends that the trial court erred by admitting hearsay statements from medical records.

### A. Standard of Review and Applicable Law

---

[3] The charge stated, in part:

> Now, if you unanimously find from the evidence beyond a reasonable doubt that on or about the 6th day of May, 2014, in Harris County, Texas, the defendant, Lonnie Jackson, did then and there unlawfully intentionally or knowingly cause the mouth of [C.L.], a person younger than fourteen years of age and not the spouse of the defendant, to contact the sexual organ of the defendant, then you will find the defendant guilty of aggravated sexual assault of a child, as charged in the indictment.

A court of appeals reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). "In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld." *Id.* We apply this deferential standard "because trial courts . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Id.*; *Alvarez v. State*, 491 S.W.3d 362, 370 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

Hearsay is a statement, other than one made by the declarant while testifying at the current trial or hearing, that a party offers into evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). A statement made for medical diagnosis or treatment is an exception to hearsay. Tex. R. Evid. 803(4). It is a statement that (1) is made for—and is reasonably pertinent to—medical diagnosis or treatment and (2) describes medical history, past or present symptoms or sensations, their inception or their general cause. *Id*. To determine whether a statement is admissible under Rule 803(4), the court must consider whether (1) the declarant's motive in making the statement is consistent with the purpose of promoting treatment and (2) the content of the statement is such that it is reasonably relied upon by health providers in treatment or diagnosis. *See Sandoval v. State*, 52 S.W.3d 851, 856 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

## B. Analysis

Herrera-Aguilera was called to the witness stand and testified while referring to her notes which were part of the medical records. She was asked what C.L.'s mother had told her regarding what she had learned from C.L.

> Q: When you spoke to the mother, do you remember what she told you about what she learned from [C.L.]?
>
> A: Looking over my notes, when I spoke with Mom, she said that once she arrived home, the kids came running up and said—
>
> [Trial Counsel]: Objection, Judge. This is not medically related. It's not relevant to medical treatment. What's going on at the house is not—I object to that.
>
> [The Court]: Sustained.
>
> [Prosecutor]: Your Honor, these are statements made so that she could do her sexual assault exam.
>
> [The Court]: The objection is overruled.
>
> [Prosecutor]: Go ahead.
>
> A: She said that she arrived home. The kids came running up to her. Said [appellant] had done something to [C.L.]. She said she took her aside and asked her what happened. She said he pulled out his penis and made her suck it.

Appellant argues that although the medical records may have been properly admitted, the trial court abused its discretion in allowing this testimony because C.L.'s mother's statements are not reasonably pertinent to medical diagnosis or treatment and do not describe medical history, past or present symptoms or

9

sensations, their inception or their general cause. He also complains that the statements in question were not made by the patient.

The plain language of Rule 803(4) does not limit its applicability to patient-declarant statements. *See Sandoval*, 52 S.W.3d at 856. Moreover, this Court has held that in circumstances where the parent is giving the information to assist in the diagnosis and treatment of the child, reliability of the statements is very high. *See id*. at 857. Here, C.L.'s mother relayed the information she had gotten from C.L. to Herrera-Aguilera for the purpose of seeking medical treatment for C.L. in connection with allegations of sexual abuse. Her statement that the children ran up to her when she arrived home and told her that appellant had done something to C.L. established that the assault had recently occurred. And her statement that C.L. told her that appellant "pulled out his penis and made her suck it" is a description of sexual abuse that was pertinent to C.L.'s diagnosis and treatment during the exam. The contents of the medical records, which included specifics about the assault, were relied upon by the medical providers. *See id*. at 856; *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, no pet.) ("The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed.").

Additionally, any error in the admission of this testimony was harmless. Error in the admission of evidence is non-constitutional error subject to a harm analysis

under Rule of Appellate Procedure 44.2(b). *See* Tex. R. App. P. 44.2(b). Erroneous admission of hearsay evidence is not harmful when it is cumulative of other, properly admitted evidence. *See Brooks v. State*, 990 S.W.3d 278, 287 (Tex. Crim. App. 1999); *Infante v. State*, 404 S.W.3d 656, 663 (Tex. App.—Houston [1st Dist.] 2012 no pet.).

Prior to the complained-of testimony, the State offered C.L.'s medical records from her sexual assault exam, without objection, which include the following statement: "Mother reports this evening she arrived home approximately 1900-2000 and on arriving home, 'the kids came running up and said Lonnie had done something to [C.L.]. I couldn't quite understand so I took her aside and asked her what happened. She said he pulled out his penis and made her suck it.'" Further, in addition to the medical records, Herrera-Aguilera had already testified that C.L.'s mother told her that there had been penile-oral contact between appellant and C.L.; J.L. testified that he saw C.L. sucking appellant's "private part" and that he told his mother what happened when she got home; and C.L. testified that appellant made her suck his "middle part." Thus, even if the complained–of testimony was inadmissible hearsay, it is cumulative of other properly admitted evidence. We overrule appellant's second point of error.

### Conclusion

We affirm the trial court's judgment.

11

Russell Lloyd
Justice

Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).