

# NUMBER 13-16-00429-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SALVADOR PAEZ,                                           **Appellant,**

**v.**

THE STATE OF TEXAS,                                     **Appellee.**

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

Appellant Salvador Paez challenges his conviction for continuous sexual abuse of a child, a first-degree felony. TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through 2017 1st C.S.). By five issues, Paez complains that the evidence is not sufficient to support his conviction, Section 21.02 violates the jury unanimity requirements of the United States and Texas constitutions, and that there is charge error. We affirm.

## I. BACKGROUND

Paez was charged with continuous sexual abuse of two girls, sisters aged four and five. *See id.* The mother of the children described at trial how the family knew Paez and the circumstances that allowed him access to her girls. She explained that Paez lived in an apartment near her family's apartment. She and her husband have seven children, including the two young girls, Carmen Cibrian and Juanita Hernandez.[1]

Paez first became friends with Lorenzo, the girls' father, then with their mother, and he often joined their barbeques on Saturday nights. After Paez had been friends with the family for about a year, he was allowed to go in and out of the house during their social events, to get things from the kitchen, or to use the bathroom at their apartment. Sometimes the mother would be in the kitchen, sometimes not. Guests used the hall bathroom that was near the door of the girls' bedroom. The girls' bedroom door was left partly open when the girls went to bed because they were more comfortable with the door open.

According to the girls' mother, on Sunday night June 15, 2015, the two girls were with her in the apartment complex walking toward their apartment. Carmen saw Paez on the sidewalk and told her mother that "she had to tell me the truth because she couldn't hold it anymore" and that the neighbor, meaning Paez, touched her. Once they got into the apartment, the mother asked Carmen, "did he touch you?" Carmen told her mother that the neighbor "touched her in the middle part, and [Juanita], too." When Carmen told her mother that the neighbor touched her in her middle part, Carmen pointed down to her

---

[1] "Carmen Cibrian" and "Juanita Hernandez" are pseudonyms for the complainants, as authorized by article 57.02 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 57.02(b) (West, Westlaw through 2017 1st C.S.); *Stevens v. State*, 891 S.W.2d 649, 651 (Tex. Crim. App. 1995).

vaginal area. Juanita also told her mother that the neighbor touched her on "the butt and the middle area, like the front." Juanita "turned around and was showing all — where her butt's at and the front, genital area, the vaginal area, you know, yeah." Even though the girls did not know Paez's name, "[a]s soon as [Carmen] saw him, she told me that he touched her." The mother estimated that Paez had gone inside the apartment five times over a year's period. The same day the girls told their mother that Paez touched them, the mother confronted Paez, as did Carmen.

During her testimony, the girls' mother identified photographs of Paez taken in June 2015 when he had very short hair. She also described him as having a shaved head during part of the time she knew him.

After the girls' outcries, their mother called the police in Edinburg and took the girls to be examined at a local hospital. The family moved away within a few months to get the girls away from that environment.

Carmen testified at trial. She was seven years old and in elementary school. She and her sister shared a bedroom in the apartment. They had bunk beds, and Carmen had the top bunk. Juanita and another sister had the bottom bunk. Carmen explained the touching by saying "at night they used to have barbecues and the neighbor would come." The neighbor would ask "to go to the restroom and then he came to my room" while she was sleeping. Her mom or dad would be in the kitchen. Carmen also explained that she had two private parts, one to pee and the other is "the butt." When the neighbor came into her room, the first time he touched her private part, the one to pee, underneath her pajamas and underwear. He used his hand and put fingers inside her private part to pee. Carmen testified she woke up and told him to stop. He also used his hand to grab her butt

and kissed her on her cheek. Carmen testified that these events happened more than once, but she did not know how many times. Carmen saw the neighbor do the same thing to Juanita, he put his finger inside Juanita's clothing, kissed her cheek, and grabbed her butt.

Carmen explained that she did not know the neighbor's name and did not initially recognize him in the courtroom but was able to describe the events leading up to her outcry to her mother, including seeing "the guy that did the thing to me." Carmen described the man who touched her as bald. After a break, Carmen identified Paez and said she recognized him because of his nose. Carmen also recognized the wife of the man who touched her; Paez's wife was sitting in the audience of the courtroom.

Juanita also testified. She was five years' old and did not want to talk about the events involving the neighbor, although she eventually identified a photo of Paez and testified that he touched the part of her body that she uses to pee with his hand. Juanita denied that the neighbor touched her butt. Juanita saw the neighbor touch her sister Carmen while Carmen was asleep. According to Juanita, the neighbor touched her only once. She told her mom because she "didn't want him to touch it."

The sexual assault nurse at the hospital testified that her physical findings were essentially normal, which is very common. She also interviewed Carmen who told her that the neighbor came over when the family barbequed, he asked to use the restroom, then came into her room, touched her inside her pajamas, and put his finger in her front private part. Juanita who was four years old did not give her any details.

The forensic interviewer testified about the process of interviewing each of the girls and explained how much more difficult it was to interview Juanita because of her age.

4

The final State's witness was Investigator Joaquin Mendoza of the Edinburg Police Department. Investigator Mendoza arrested and interviewed Paez. Paez waived his *Miranda* rights and made a statement that was videotaped. *See Miranda v.* Arizona, 384 U.S. 436, 444–45 (1966). Investigator Mendoza also prepared a summary statement that day, Paez read it in Spanish and initialed and signed the statement before a witness. Inspector Mendoza read Paez's summary statement at trial. In his statement, Paez admitted:

> about a month ago we were drinking at their apartment, No. 473, with my neighbors. I went in heading to the bathroom; and after I got out of the bathroom, I went into the room where my neighbors' daughters sleep. I saw the girls asleep, and I saw the one that was approximately four years old was asleep in the bottom bunk bed. I got close to the girl; and with my right hand, I started rubbing her vagina under her underwear. The girl woke up and I stopped touching her and I left the room.

> On Friday, June 12th, 2015, I was again drinking with my neighbors. I went into the girls' room again. I saw the older girl — I think she's about six years old—asleep in the top bunk bed and I started rubbing her vagina above her underwear. The girl woke up and told me "no, no" and I told her to go to sleep. Then I saw the 4-year-old girl on the bottom bunk, and I gave her a kiss. I regret very much having touched the girls that way.

Before trial, the State had an interpreter do a word for word translation of the Spanish into English that was admitted into evidence. Multiple times in his statement, Paez says he doesn't remember and that he is repentant. He said, "I don't have it in my mind because no—I didn't do that. I mean—even if I was drunk, I don't remember having done . . . ." Later on in his video interview, Paez said that he did not recall when he first touched the girls, but then he said a month, "about a month." He then said, "I don't remember if it was only the little one. . . . Yes, and the older one I think that–not that time . . . . I just grabbed her part." Paez admitted touching each child and putting his finger

inside each child's female sexual organ. He said the older one just once, but the younger child, twice.

The defense did not put on any evidence. The jury found Paez guilty and the trial court sentenced Paez to thirty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division. Paez obtained new counsel who filed a motion for new trial in which counsel raised constitutional challenges to the statute and claims of ineffective assistance of counsel. The trial court heard evidence on the motion for new trial and denied it. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Paez argues that there is insufficient evidence of two or more instances of sexual abuse that extended over a thirty-day period.

### A. Standard of Review

The Court is required to apply the sufficiency standard from *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Williams v. State*, No. 03-11-00598-CR, 2013 WL 6921489 at *6 n.10 (Tex. App.—Austin Dec. 31, 2013, pet. ref'd) (mem. op., designated not for publication). *Jackson* requires the reviewing court to "view[] the evidence in the light most favorable to the prosecution," to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the jury's credibility and weight determinations because the jury is the *sole* judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899 (emphasis in original).

6

"The reviewing court must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Evidence is insufficient under the *Jackson* standard in four circumstances: 1) the record contains no evidence probative of an element of the offense; 2) the record contains a mere "modicum" of evidence probative of an element of the offense; 3) the evidence conclusively establishes a reasonable doubt; and 4) the acts alleged do not constitute the criminal offense charged. 443 U.S. at 314, 318 n. 11, 320. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

### B.    Applicable Law

The elements of continuous sexual abuse of a child are: 1) the defendant committed two or more acts of sexual abuse, 2) during a period that is more than thirty days in duration, and 3) at the time of the commission of each of these acts the defendant was older than 17 and the victim was younger than 14. TEX. PENAL CODE ANN. § 21.02(b); *Mitchell v. State,* 381 S.W.3d 554, 557 (Tex. App.—Eastland 2012, no pet.). "The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Mitchell*, 381

S.W.3d at 561 (citing *Williams v. State*, 305 S.W.3d 886, 890 n. 7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006)).

We measure the sufficiency of the evidence supporting a conviction "by the elements of the offense as defined by the hypothetically correct jury charge for the case," applied to the particular facts of the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Wheaton v. State,* 129 S.W.3d 267, 271–72 (Tex. App.—Corpus Christi 2004, no pet.). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child requires proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. TEX. PENAL CODE ANN. § 21.02(d) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."); *Williams*, 305 S.W.3d at 890–91 (requiring the State to prove two acts of sexual abuse "committed over a span of thirty or more days"). But "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d).

**C.     Discussion**

Paez argues that there is insufficient evidence to show that there were two or more instances of sexual abuse that extended over a thirty-day period.  Neither child could say when the events of touching occurred or how many times, although Carmen said there were "many."  Their mother's testimony was that the family knew Paez for approximately two years before Carmen's outcry.  It was just the year before Carmen's outcry that Paez began coming in the house, and the mother testified it was approximately five times during that year.  The girls confirmed that Paez touched them the Friday or Saturday before their outcry on Sunday June 14, 2015.  Paez stated that he did not remember touching the girls initially, and then admitted that approximately a month before Monday June 16, 2015, he was in their room and touched Juanita but could not be certain that he touched Carmen.  However, the girls' initial outcry to their mother included Paez touching Juanita in her front "middle part" and on her butt, and Carmen told her mother that Paez touched her in her front "middle part" and grabbed her butt.  In addition, Carmen told the forensic interviewer that the touching happened "many times."

Based upon the testimony, the jury could have believed that during the twelve months before Carmen's outcry, Paez had touched her "many times" in a period over thirty days.  The jury could have viewed Paez's statement which attempted to minimize his conduct, and which was full of "I don't remember" as being a minimum of events, rather than a full account.  On this record, a reasonable jury could have found Paez committed two or more incidents of sexual abuse over a thirty or more-day period.  *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (holding that the jury has the exclusive right to judge credibility and determine the weight to be given to evidence); *see also Cantu*

9

*v. State*, No. 13-14-00133-CR, 2018 WL 360235 at *4 (Tex. App.—Corpus Christi Jan. 11, 2018, no pet.) (mem. op., designated not for publication) (holding that the evidence was sufficient to support a conviction of defendant of continuous sexual assault of a child where evidence from the child was contradicted by defendant). Paez's first issue is overruled.

### III. CONSTITUTIONAL CHALLENGES

By his second and third issues, Paez argues that section 21.02 violates the requirements of jury unanimity in the United States and Texas constitutions. TEX. PENAL CODE ANN. § 21.02.

#### A. United States Constitution

Paez argues that the Sixth Amendment to the U.S. Constitution made applicable to the states by the Fourteenth Amendment requires jury unanimity and that section 21.02 violates those requirements. U.S. CONST. AMEND. IV, XIV, § 1. However, the Fourteenth Amendment does not extend the Sixth Amendment's jury unanimity requirement to state prosecutions. *See McDonald v. City of Chicago*, 561 U.S. 742, 766 n.14, 867–68 (2010); *Schad v. Arizona*, 501 U.S. 624, 630 (1991); *see also Romero v. State*, 396 S.W.3d 136, 147 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Paez relies in part on *Andres v. United States,* however that reliance is misplaced. 333 U.S. 740 (1948). *Andres* is a federal case in which the defendant was convicted of murder under a federal statute. Accordingly, Paez's second issue is overruled.

#### B. Texas Constitution

Paez also argues that section 21.02 violates the unanimity requirements of Texas law. *See* TEX. CONST. ART. I, §§ 10, 13, 19; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West, Westlaw 2017 through 1st C.S.). "Each juror must agree the defendant committed

10

each element of the crime, but need not agree on the 'underlying brute facts' that make up the 'manner and means' by which the defendant committed the crime." *Ngo v. State*, 175 S.W.3d 738, 747, 751 n. 49 (Tex. Crim. App. 2005) (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). The Texas Legislature has defined the crime of continuous sexual abuse of a child so that the series of events of abuse over the specified period of time are the elements. The particular sexual abuse acts are the manner or means about which the jury is not required to be unanimous. *See Fulmer v. State*, 401 S.W.3d 305, 311 (Tex. App.—San Antonio 2013, pet ref'd). Jury unanimity is required for the findings that a defendant committed two or more acts of sexual abuse over a more than thirty-day period. *Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App.—San Antonio 2016, pet. ref'd).

We and our sister courts have previously considered whether section 21.02 violated the due course of law requirements of the Texas Constitution and have previously held that it does not. Nothing before us today changes that analysis. *Id.*; *Fulmer*, 401 S.W.3d at 312–13; *Casey v. State*, 349 S.W.3d 825, 829–30 (Tex. App.—El Paso 2011, pet. ref'd); *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd); *Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex. App.—Austin 2010, no pet.); *Reckart v. State*, 323 S.W.3d 588, 600–01 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 857–58 (Tex. App.—Dallas 2010, pet. ref'd).

Paez's third issue is overruled.

## IV. JURY CHARGE

By his fourth and fifth issues, Paez argues that the trial court's jury charge was structurally and egregiously erroneous by authorizing conviction as charged on a less than

11

unanimous verdict. These issues flow from Paez's argument that § 21.02 violates due process by allowing a less than unanimous verdict because jurors do not have to agree on the underlying incidents of sexual abuse.

## A. Standard of Review

Paez did not object the jury charge before it was given. As a result, if there was error, he must establish egregious harm. *See Gomez v. State*, 498 S.W.3d 691, 696 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B. Discussion

Paez argues that *Gomez* compels reversal of his conviction. In *Gomez*, the defendant was charged with aggravated sexual assault of a child. *Id.* The child testified to four discrete incidents in which Gomez put his finger in her vagina. *Id.* The State did not elect which incident the jury was to consider, and Gomez did not object to the charge. *Id.* The case was reversed on appeal after the court of appeals held that the State's closing argument encouraged the jury to decide the case on an improper ground which tipped the scales to find egregious harm. *Id.*

Gomez was charged with a single count of sexual abuse of a child which required the State to prove a single event and which required the jury to agree on the same event. But because the jury charge did not instruct the jury that they had to agree on one of the multiple events, the jury charge violated the requirement of unanimity. *Id.*

Here, unlike *Gomez*, the elements on which the jury is required to agree in a continuous sexual abuse of a child case are: that the defendant committed more than two of the defined acts over a period of thirty or more days. The jury was not required to agree on the specific incidents that constituted the manner or means of the offense, as discussed

12

in part III(B), *supra.* Accordingly, there was no charge error and no harm to consider. *See Carmichael*, 505 S.W.3d at 106 (holding that jury unanimity is required for the findings that a defendant committed two or more acts of sexual abuse over a more than thirty-day period.); *Martin*, 335 S.W.3d at 872. Paez's issues four and five are overruled.

## V. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of August, 2018.